I9STMARP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          17 CR 243 (SHS)

5   BROOKE MARCUS,

6              Defendant.

7   ------------------------------x

8                                     New York, N.Y.
                                      September 28, 2018
9                                     3:20 p.m.

10

    Before:
11
                        HON. SIDNEY H. STEIN,
12
                                      District Judge
13

14                        APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    KIERSTEN FLETCHER
17       Assistant United States Attorney

18  KREINDLER & KREINDLER
         Attorneys for Defendant
19  MEGAN BENETT

20

    ALSO PRESENT:  WINTER PASCUAL, Pretrial Services
21                 CHRISTOPHER BASTOS, NYPD

22

23

24

25

I9STMARP

1          (Case called)

2          MS. FLETCHER:  Good afternoon, your Honor, Kiersten

3  Fletcher for the government, and I'm joined at counsel's table

4  by Detective Christopher Bastos of the NYPD and Homeland

5  Security Investigations.

6          THE COURT:  Good afternoon.

7          From Pretrial?

8          MR. PASCUAL:  Winter Pascual, your Honor.

9          Defense?

10          MS BENETT:  Good morning, your Honor, Megan Benett on

11  behalf of Brooke Marcus, who is standing to my left.

12          THE COURT:  Good morning, please be seated.

13          The supposition is this is not necessary since it was

14  so long ago, but it doesn't matter telling the parties that

15  when I was in private practice I represented the firm of

16  Kreindler & Kreindler in one or more litigations.  I have been

17  a judge for 23 years, so it was more than 23 years ago, just so

18  everyone is aware.

19          MS BENETT:  I know the historical fact, and just for

20  the record, it predates my time at the firm as well.  Thank

21  you, your Honor.

22          THE COURT:  Government is this for arraignment and

23  change of plea?  I take it we have to enter a plea first.

24          MS. FLETCHER:  Yes, your Honor, this is both

25  presentment and arraignment and change of plea.

I9STMARP

1          THE COURT:  It's everything.

2          MS. FLETCHER:  Yes, it's everything.

3          THE COURT:  Defense, would you rather at the

4    arraignment you enter your plea of not guilty and then move to

5    change it, or do it as she entered a plea of guilty.

6          MS BENETT:  Frankly, I think we can enter the plea of

7    guilty initially.

8          THE COURT:  On the arraignment.

9          MS BENETT:  Yes.

10          THE COURT:  All right.  If that's what you wish.

11          Ms. Marcus, if you would stand, please.  I wish to

12    inform you of basic constitutional rights you have.  In our

13    criminal justice system you do have the right to remain silent,

14    Ms. Marcus.  You don't have to make any statement whatsoever.

15    And even if you have already made statements to the law

16    enforcement authorities, you do not have to make any additional

17    statements.  Any statements that you do make may be used

18    against you.  Do you understand those rights?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  You have the right to be represented by an

21    attorney today and at all future proceedings in this case, and

22    if you're unable to afford an attorney, I will appoint an

23    attorney to represent you.  Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  I take it you already retained an

I9STMARP

1      attorney, is that correct?

2                THE DEFENDANT:  Yes.

3                THE COURT:  And who is that?

4                MS BENETT:  Your Honor, just to be clear, I was

5      appointed to represent Ms. Marcus pursuant to the Criminal

6      Justice Act when she was originally a witness, so I don't know

7      if we need to do anything now that she is a defendant in this

8      case.

9                THE COURT:  My deputy informs me there's nothing

10     online in regard to whether your client met the CJA

11     requirements for appointment as CJA attorney.

12               MS BENETT:  She did.  It was docketed under USA v. Doe

13     because on Tuesday when she appeared in magistrate court she

14     was not charged.  So I can forward to the Court the entry

15     appointing me after she submitted the CJA affidavit, if that

16     would help, and perhaps the Court could adopt whatever the

17     magistrate court already found in terms of her eligibility.

18               THE COURT:  I don't know whether we should be doing

19     that or having a new CJA --

20               MS BENETT:  Or we could file a new Form 23A.  I could

21     fill that out quickly.

22               THE COURT:  Let's do that.

23               Government, you look quizzical.

24               MS. FLETCHER:  No, your Honor, the government's view I

25     think is that the prior affidavit was sufficient for Ms. Benett

I9STMARP

1    to be appointed, but if the Court --

2              THE COURT:  It's easier.

3              MS. FLETCHER:  Okay.

4              THE COURT:  The assumption is the form will not be

5    difficult to fill out.

6              (Pause)

7              MS BENETT:  Your Honor, I'm handing up the --

8              THE COURT:  And my representation of Kreindler &

9    Kreindler, which ended before I became a judge, involved only

10   civil matters.

11             Would you administer the oath to Ms. Marcus, please.

12             (Defendant sworn)

13             DEPUTY CLERK:  Please state your full name and spell

14   it for the record.

15             THE DEFENDANT:  Brooke Carol Marcus, B-R-O-O-K-E

16   C-A-R-O-L  M-A-R-C-U-S.

17             THE COURT:  Ms. Marcus, do you swear to the

18   truthfulness of the information set forth in this CJA financial

19   affidavit, Form 23?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And is this your signature?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  I signed it as approved, and I hereby

24   appoint Megan Benett pursuant to the Criminal Justice Act to

25   represent Ms. Marcus.  She has previously been approved in a

I9STMARP

Jane Doe proceeding.

MS BENETT:  Thank you, your Honor.

THE COURT:  Have you received a copy of Superseding Information S9 17 Crim. 243?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss it with your attorney?

THE DEFENDANT:  I did.

THE COURT:  And did she answer your questions about it?

THE DEFENDANT:  She did.

THE COURT:  You have the right to have me read it in open court, but you don't have to have me read it, it's entirely up to you.

THE DEFENDANT:  It's fine.

THE COURT:  I accept that as a knowing and voluntary waiver.

Your attorney informs me that you wish to plead guilty to the superseding information, is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Well, I'm not permitted simply to accept your guilty plea, there are a number of things I have to do to protect your rights and make sure that you understand what you're pleading guilty to and the consequences of entering a plea of guilty and what rights you're going to be giving up and other things, including I need to know there's an actual

I9STMARP

1    factual basis for the plea.

2              MS. FLETCHER:  Your Honor, I apologize for

3    interrupting, and I apologize if I'm interrupting your Honor's

4    flow, but does Ms. Marcus need to waive indictment and consent

5    to the final information?

6              THE COURT:  That will be part of the plea.

7              MS. FLETCHER:  Thank you, your Honor.

8              THE COURT:  At the end of plea you can let me know if

9    I left anything off of your checklist.

10             MS. FLETCHER:  I will sit down until then.

11             THE COURT:  You don't have to if something is

12   critical, and you can also have Rule 11.  Everyone here wants

13   to do it correct.

14             Now Ms. Marcus, my deputy administered the oath to you

15   a moment ago.  Do you remember that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand that you're now under

18   oath and if you answer any of my questions falsely, your false

19   or untrue answers may later be used against you in another

20   prosecution for perjury or for making a false statement?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And I believe you told me your full name,

23   correct, what is it?

24             THE DEFENDANT:  Brooke Carol Marcus.

25             THE COURT:  How old are you, Ms. Marcus?

I9STMARP

```
 1              THE DEFENDANT:  51.

 2              THE COURT:  Pardon me?

 3              THE DEFENDANT:  51.

 4              THE COURT:  How far did you go in school?

 5              THE DEFENDANT:  High school.

 6              THE COURT:  Did you graduate?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  Are you able to read, write, speak and

 9     understand English?

10              THE DEFENDANT:  Yes.

11              THE COURT:  English is your native language?

12              THE DEFENDANT:  Yes, your Honor.

13              THE COURT:  Are you now or have you recently been

14     under the care of a doctor or psychiatrist?

15              THE DEFENDANT:  No, your Honor.

16              THE COURT:  Have you ever been treated or hospitalized

17     for any mental illness or any type of addiction, including drug

18     or alcohol addiction?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  When was that?

21              THE DEFENDANT:  I'm currently on a methadone program.

22              THE COURT:  Did you receive any inpatient program --

23              THE DEFENDANT:  No.

24              THE COURT:  -- for your addiction?

25              What was the addiction to?
```

I9STMARP

1            THE DEFENDANT:  Heroin.

2            THE COURT:  But you have never had any inpatient

3    program like a 28-day program or week-long program?

4            THE DEFENDANT:  I have about 20 years ago.

5            THE COURT:  But not since?

6            THE DEFENDANT:  Not since then.

7            THE COURT:  In the past 24 hours have you taken any

8    drug, medicine or pills or consumed any alcohol?

9            THE DEFENDANT:  No, your Honor.

10            THE COURT:  I assume you took methadone.

11            MS BENETT:  Your Honor, Ms. Marcus has visited -- she

12    was flown here from the District of Arizona for the purpose of

13    these proceedings.  She had a courtesy appointment in a

14    methadone clinic on Tuesday and on Wednesday.

15            THE DEFENDANT:  No, just Tuesday.

16            MS BENETT:  On Tuesday, she was not able to go

17    yesterday or today, so she has not had methadone in the last --

18            THE COURT:  So she answered my question --

19            MS BENETT:  She answered your question correctly.

20            THE COURT:  Fine, as I assumed she would.

21            Is your mind clear today, Ms. Marcus?

22            THE DEFENDANT:  Yes, your Honor.

23            THE COURT:  Are you feeling all right?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Are you represented by an attorney?

I9STMARP

1              THE DEFENDANT:  Yes.

2              THE COURT:  And who is that?

3              THE DEFENDANT:  Megan Benett.

4              THE COURT:  Ms. Benett, it sounds like you have had

5    some involvement with Ms. Marcus before today.  Do you have any

6    doubt as to her competence?

7              MS BENETT:  I do not.

8              THE COURT:  Now I believe your attorney said that you

9    wished to enter a plea of guilty today, is that correct,

10   Ms. Benett?

11             MS BENETT:  Yes, your Honor.

12             THE COURT:  That was certainly my understanding when I

13   came here.  Is that true, Ms. Marcus, do you wish to enter a

14   plea of guilty to the charges against you today?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Have you had a complete opportunity to

17   discuss your case with Ms. Benett and to discuss the

18   consequences of entering a plea of guilty?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Are you satisfied with Ms. Benett and her

21   representation of you?

22             THE DEFENDANT:  Yes.

23             THE COURT:  On the basis of Ms. Marcus' responses to

24   my questions and my observations of her demeanor as she stands

25   here before me now, I make the finding that she's fully

I9STMARP

competent to enter an informed plea.

          I have told you already, Ms. Marcus, that I'm going to
be asking you questions.  The purposes is for me to make sure
you understand the consequences of entering a plea of guilty
and for me to come to the conclusion that you are in fact
guilty, or rather that you wish to plead guilty because you are
in fact guilty.

          I want you to listen to me carefully, and if you don't
understand anything I'm asking you or saying to you, I want you
to stop me and I will answer any of your questions.  You can
ask Ms. Benett anything you want.  Do you understand that?

          THE DEFENDANT:  Yes.

          THE COURT:  Under the Constitution and laws of the
United States, you have a right to a speedy and public trial on
the charges against you which are contained in Superseding
Information S9 17 Crim 243.  Do you understand that?

          THE DEFENDANT:  Yes.

          THE COURT:  If there were a trial, you would be
presumed innocent and the government would be required to prove
you guilty by competent evidence and beyond a reasonable doubt.
You would not have to prove you were innocent at a trial.  Do
you understand those rights?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  If there were a trial, a jury composed of
twelve people selected from this district would have to agree

I9STMARP

1    unanimously that you were guilty.  Do you understand those

2    rights?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Because this is being recorded, you have

5    to say the answer.  I need something more than a nod.

6                You have a right to be represented by an attorney at

7    trial and at every or stage of the proceeding.  If you could

8    not afford an attorney, one will be provided to you at no cost

9    to you.  Do you understand those rights?

10               THE DEFENDANT:  Yes, your Honor.

11               THE COURT:  If there were a trial, you would have the

12   right to see and hear all the witnesses against you, and your

13   attorney could cross-examine them.  You would have a right to

14   have your attorney object to the government's evidence and

15   offer evidence on your own behalf if you so desired, and you

16   would have the right to have subpoenas issued or other

17   compulsory process used to compel witnesses to testify in your

18   defense.  Do you understand those rights?

19               THE DEFENDANT:  Yes, your Honor.

20               THE COURT:  If there were a trial, you would have the

21   right to testify if you wanted to, but no one could force you

22   to testify if you did not want to, and no inference or

23   suggestion of guilt could be drawn if you decided not to

24   testify at a trial.  Do you understand those rights?

25               THE DEFENDANT:  Yes, your Honor.

I9STMARP

|  | THE COURT:  Do you understand that by entering a plea |
| --- | --- |
| of guilty today, you're giving up each and every one of the |

THE COURT:  Do you understand that by entering a plea
of guilty today, you're giving up each and every one of the
rights I described, you're waiving those rights, and that there
will be no trial in the case against you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that you have the right
to change your mind right now and refuse to enter a plea of
guilty.  You don't have to enter this plea if you do not want
to for any reason.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now I believe you already told me you
received a copy of the Superseding Information S9 17 Crim 243
and you read it and discussed it with your attorney, is that
right?

THE DEFENDANT:  Correct.

THE COURT:  If you want, I will read that information
to you, but you don't have to --

THE DEFENDANT:  It's fine.

THE COURT:  Okay.  I accept that as a knowing and
voluntary waiver.

Do you understand that you're charged in that
superseding information with engaging in a wire fraud
conspiracy from 2008 until 2017 in violation of 18, United
States Code, 1349, do you understand that?

THE DEFENDANT:  Yes, your Honor.

I9STMARP

1          THE COURT:  If at any time you want me to take a

2    break, I certainly will, Ms. Marcus, because I can see you're

3    under some strain.  So we can take a break whenever you want,

4    and if you want, you can sit down.  You decide.

5          THE DEFENDANT:  Thank you.

6          THE COURT:  Now I'm informing you, Ms. Marcus, that

7    you have a constitutional right to be charged by an indictment,

8    and an indictment is a charge by a grand jury.  An information,

9    on the other hand, is simply a charge by the prosecutor.  So

10   you're being charged here in an information, which is a charge

11   by the prosecutor.  Do you understand?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  But you have a right to be charged in an

14   indictment by a grand jury.  Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  I'm going to give you a document titled

17   waiver of indictment.  I'm going to mark it as Government

18   Exhibit 1.  I'm going to ask my deputy to show it to you.

19         Is that your signature on Government Exhibit 1?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  It reads:  The above named defendant, who

22   is accused of violating 18 USC 1349, being advised of the

23   nature of the charges and of her rights, hereby waives in open

24   court prosecution by indictment and consents that the

25   proceeding may be by information instead of by indictment.  Do

I9STMARP

1    you understand that you have waived the right to be charged by

2    an indictment and you consented to being charged by an

3    information by the government?

4              MS BENETT:  Yes.

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Did you waive that right knowingly and

7    voluntarily?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you understand if you did not plead

10   guilty, the government would have to prove each and every part

11   or element of the charge in Count One beyond a reasonable doubt

12   at a trial?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Government, please set forth the elements

15   the government would have to prove beyond a reasonable doubt.

16             MS. FLETCHER:  Yes, your Honor.  The government would

17   first have to prove that the defendant entered into an

18   agreement with others to commit a crime, and second, that she

19   entered that agreement willingly and knowingly.  Here the crime

20   is wire fraud as set forth in 18, United States Code, Section

21   1343.

22             THE COURT:  And the government would also have to

23   prove venue, which just means that an act in furtherance of the

24   conspiracy took place in the Southern District of New York, but

25   venue would have to be proven simply by a preponderance of the

I9STMARP

1     evidence.

2              Do you understand the elements that the government

3     would have to prove beyond a reasonable doubt?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that the maximum

6     possible penalty of the crime to which you are entering a plea

7     of guilty is 20 years imprisonment, a maximum term of three

8     years supervised release, a maximum fine of the greatest of

9     $250,000 or twice the gross pecuniary gain derived from the

10    offense, twice the gross pecuniary loss to individuals other

11    than you resulting from the offense, plus a mandatory $100

12    special assessment.  Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Do you also understand that I can order

15    that you make restitution in an amount specified by the Court?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Now when I was describing the maximum

18    sentence, I said part of the maximum sentence was three years

19    supervised release.  Supervised release, Ms. Marcus, means

20    you're going to be subject to monitoring upon your release from

21    prison, and the monitoring is to be under terms and conditions

22    that could lead to your reimprisonment without a jury trial for

23    all or part of the term of supervised release and without

24    credit for time previously served on post-release supervision

25    if you violate any term or condition of supervised release.  Do

I9STMARP

1  you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that if I accept your

4  guilty plea today and determine that you are guilty, that

5  determination may deprive you of such valuable civil rights as

6  the right to vote, the right to hold public office, the right

7  to serve on a jury and the right to possess any kind of

8  firearm?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Ms. Benett, I take it -- I shouldn't take

11 it.  Ms. Benett, is your client a United States citizen?

12         MS BENETT:  She is, your Honor.

13         THE COURT:  Thank you.  Under current law, Ms. Marcus,

14 there are sentencing guidelines that judges must use in

15 applying the factors set forth in 18, United States Code,

16 Section 3553(a) to determine what a fair and reasonable and

17 appropriate sentence is.  Have you talked to Ms. Benett about

18 the sentencing guidelines?

19         THE DEFENDANT:  We have discussed it briefly, but

20 not -- I don't really know what --

21         MS BENETT:  Your Honor, we talked about the sentencing

22 guidelines and how they function.  We haven't done a specific

23 guidelines calculation in the facts.

24         THE COURT:  Well, I don't know that I could do that

25 because I don't know the criminal history and a variety of

I9STMARP

1    other things.

2              Is that something you want to undertake, Ms. Benett,

3    before we proceed?  Because I certainly will give you time to

4    do that.

5              At a minimum, I'm going to ask you to talk to your

6    client and answer any of her questions about the sentencing

7    guidelines.

8              MS BENETT:  Could you give me one second to talk to

9    the government?

10             THE COURT:  Of course.

11             (Pause)

12             MS BENETT:  Your Honor, Ms. Marcus and I had

13   previously discussed the function and the methodology of the

14   sentencing guidelines and we have had a further conversation

15   now.  If the Court wants to ask her any additional questions

16   about her understanding of the sentencing guidelines generally,

17   I think that she would be able to answer that.

18             THE COURT:  Ms. Marcus, what I want to understand is

19   whether or not you had a full opportunity to discuss the

20   sentencing guidelines with Ms. Benett and that you feel you

21   have a grasp of how the sentencing guidelines work.  It's

22   important for me to believe you know what you're heading for by

23   entering a plea of guilty.  And if you have any hesitancy about

24   that at all, I will just adjourn this and we'll give you a full

25   opportunity to talk with Ms. Benett.  Do you think you

I9STMARP

1    understand the sentencing guidelines?

2                 THE DEFENDANT:  I do.

3                 MS BENETT:  If I could, your Honor, there is an

4    agreement between the government and the defense that I believe

5    has been handed up to the Court.

6                 THE COURT:  Yes, I have it.

7                 MS BENETT:  It doesn't contain a guidelines

8    calculation.

9                 THE COURT:  That is correct.

10                MS BENETT:  The information that would drive the

11   offense level in this case has not been -- the government

12   hasn't calculated.  I think that we would take a very

13   conservative position on certain -- the loss amount, for

14   example, given the de minimis compensation my client received

15   over the course of her long course of her involvement.  I

16   imagine the government might take a different position.

17                So I can't represent to the Court that Ms. Marcus and

18   I have discussed specifically what we expect the government

19   would represent for a guidelines calculation or what the Court

20   might conclude, because the government has sole control over

21   the facts here on the loss amount and we don't know what that

22   is.  But we have talked about what factors will be relevant for

23   purposes of calculating the offense level, and we talked about

24   her criminal history category, and we talked about the way the

25   guidelines function as one of several factors that the Court

I9STMARP

1       takes into consideration.

2               THE COURT:  Have you given her your estimation or your

3       reasonable belief as to the range of positions the government

4       would be taking?

5               MS BENETT:  I think maybe that's a better question put

6       to government if they want to represent the positions that they

7       might be taking.

8               THE COURT:  In other words, you don't know what

9       position the government is going to take so you haven't been

10      able to advise your client in regard to that.

11              MS BENETT:  I have asked and I have not received a

12      response.

13              THE COURT:  Ms. Fletcher.

14              MS. FLETCHER:  Your Honor, given the terms of

15      Ms. Marcus' plea agreement -- the government, in the context of

16      these cooperation agreements, does not come to an agreement

17      with the defendant as to the loss amount or as to other

18      sentencing enhancements that might apply in calculating the

19      defendant's guidelines range.  In this case, that is in part

20      because, while we have met with Ms. Marcus on several occasions

21      and we have some understanding of her participation in this

22      conspiracy, we do not yet have an understanding of the full

23      scope.  And so we have not come to a conclusion as to what our

24      recommendation would be to the probation department in terms of

25      the appropriate loss amount for Ms. Marcus.

I9STMARP

| | |
|---|---|
| 1 | Now that loss amount, given the charge, is a |
| 2 | significant component of her guidelines range, so we're not in |
| 3 | a position to say what we think her guidelines would be.  We |
| 4 | have an understanding of the extent of her criminal history, |
| 5 | and we discussed that at length with both Ms. Marcus and with |
| 6 | her counsel, and we have discussed generally what other |
| 7 | sentencing enhancements might apply based on plea agreements we |
| 8 | have entered in this case with other defendants.  We're just |
| 9 | not in a position to project at this point what we think her |
| 10 | ultimate guidelines range would be, as is the case with nearly |
| 11 | every -- |
| 12 | THE COURT:  No, that I understand, but it seems to me |
| 13 | that the defendant is entitled know -- maybe not from the |
| 14 | government, maybe from her own lawyer -- what the possible |
| 15 | ranges that the government is going to be advocating are based |
| 16 | on what the defense knows. |
| 17 | Ms. Benett, is your position that you're simply unable |
| 18 | to advise your client on the various scenarios of what the |
| 19 | government would be presenting to the probation department? |
| 20 | MS BENETT:  I have heard from the government the |
| 21 | methodology that they employed in calculating the loss amount |
| 22 | for other defendants in the case.  I believe if that were the |
| 23 | same methodology used for Ms. Marcus that I could make a |
| 24 | reasonable prediction of the loss amount and I could predict |
| 25 | with some confidence the other guidelines enhancements that |

I9STMARP

1     would be at play.

2          By way of background, Ms. Marcus had been working with

3     law enforcement in other districts for several years.  She came

4     forward I believe in 2016 to reveal information about the fraud

5     and began proactively cooperating in the District of Utah and

6     the District of Arizona.  So she understood that she had

7     certain protections that had not been -- her understanding of

8     her protections was not consistent with what the government

9     had -- as I understand it, what the government had intended to

10    represent.

11         She came here on Tuesday expecting to provide

12    information to the government to assist them in their upcoming

13    prosecution before the Court beginning next month.  It became

14    evident I think very early on upon her arrival that she was at

15    risk of her own criminal exposure here, notwithstanding

16    conversations that she had with agents and prosecutors in other

17    districts.  The risk of facing an indictment without a

18    cooperation agreement was one that we discussed, and that, on

19    balance, Ms. Marcus decided was not in her best interest, and

20    we proceeded with meeting with the government, and we are now

21    here today.

22         With the posture of the case and sort of the timeline,

23    I do not have adequate information to be able to tell her what

24    the loss amount would be.  I certainly would take the position

25    that the same methodology that was employed for co-defendants

I9STMARP

1   should be employed here, and if that is the case, I could give

2   a guidelines calculation.  Unless the government can represent

3   that that's the same methodology that they would use, I cannot

4   adequately advise her about what I would predict a guidelines

5   calculation would come out to.

6            THE COURT:  Can you advise her as to the various

7   options that, in your view, the government has available to it

8   in terms of its recommendations for sentencing, or rather its

9   recommendations for a guidelines calculation?

10           MS BENETT:  Yes, that I can and I have -- that I can

11  and I have done in terms of discussing whether it would be the

12  way that the government -- the various methods that the

13  government could employ in arguing for loss amount, we have

14  discussed that.  And I have discussed with her how the

15  government -- as I understand it, how government has calculated

16  the loss amount in other cases, but again, I can't represent,

17  because the government hasn't told me how it would calculate

18  her guidelines, what methodology it would employ in her case.

19           THE COURT:  Ms. Fletcher.

20           MS. FLETCHER:  Your Honor, that's right.  The question

21  in terms of the guidelines calculation issue here is what

22  losses are reasonably foreseeable to the defendant based on her

23  role in the conspiracy.  And as your Honor can see from the

24  cooperation agreement, she was involved in this wire fraud

25  conspiracy for a long time.  She was also working with

I9STMARP

different groups of people on different sales floors in

different roles over time, so her visibility into the full

scope of the fraud at each floor may very well be different as

she moves from one to the next.  I would agree with Ms. Benett

that her personal compensation, based on the information the

government has, was quite low.

          Now I think we need to explore with her further in the

context of her cooperation what she understood about the scope

of the fraud and what losses were reasonably foreseeable to

her.  And that is a discussion we will certainly have with

Ms. Benett in advance of her sentencing, but we have not had it

up until this point.

          THE COURT:  And why not?

          MS. FLETCHER:  In part because of the timing of this

proceeding, and in part because --

          THE COURT:  Well, this can be adjourned for you to

have those discussions.

          MS. FLETCHER:  It could, your Honor.  I'm not sure

that it's required, so long as Ms. Marcus has been advised

about the different ways in which the guidelines may be

calculated, and so long as she understands that the government

is not promising her a particular methodology or a particular

guidelines calculation at this point.

          And I just note, your Honor, your Honor has taken a

number of pleas in this case with similar terms, and the

I9STMARP

1    government's view is that that was appropriate for the Court to

2    do without having the benefit of a specific guidelines

3    calculation for each defendant.

4            THE COURT:  Were the other defendants in the same

5    posture in terms of their knowledge of what the government's

6    intentions were at sentencing?

7            MS. FLETCHER:  Your Honor, I can't speak to what each

8    of those individual defendants knew, but none of their plea

9    agreements --

10           THE COURT:  Well, it shouldn't be -- it's what the

11   government was telling them, and you're privy to what the

12   government was telling them.

13           MS. FLETCHER:  I could represent that in none of those

14   cases did the government make a representation to any would-be

15   cooperating defendant as to what their loss amount would be at

16   the time of sentencing.  The representations that the

17   government has made in the past are the same as they're making

18   here, which is that the guidelines would be calculated in

19   connection with sentencing, and that government makes certain

20   promises pursuant to the plea agreement, but none of those

21   promises relate to how the loss amount will be calculated or

22   how that calculation will ultimately make its way into a final

23   guidelines calculation.

24           THE COURT:  All right.  Ms. Marcus, you can see the

25   government is taking the position that it simply doesn't know

I9STMARP

1    what the appropriate -- in its view -- loss amount is; in other

2    words, what the loss was that resulted from your criminal

3    conduct.  And certainly the loss amount is an important factor

4    in the guideline calculations.  So you're not being given any

5    assurance by the government in regard to that.

6          I assume you realize that whatever the government's

7    position is, it's me, it's the Court who makes the ultimate

8    decision in such matters.  And I can accept or reject the

9    government's position, just as I can accept or reject the

10   defense position on what the loss amount is or with regard to

11   any aspect of the sentencing guidelines.

12         I guess the issue for you, Ms. Marcus, is do you feel

13   comfortable that you have enough knowledge about how the

14   guideline works and have had enough time to have your attorney

15   answer your questions about how the guidelines work to proceed

16   with pleading guilty today?

17         MS BENETT:  Your Honor, could I talk to the government

18   briefly?

19         THE COURT:  Yes, take as much time as you want.

20         (Pause)

21         MS BENETT:  Your Honor, I apologize for the delay.

22   Thank you for giving us the opportunity to talk.

23         THE COURT:  No need.  I want to make certain that she

24   understands, to the extent possible, how the guidelines work

25   and what the potential exposure for her is in terms of what the

I9STMARP

1  government -- the position the government will take.

2          MS BENETT:  And we have had an opportunity to speak

3  about the various ranges and the various factors that could

4  come into play here and what that could mean in terms of the

5  high end of a guidelines calculation, and what arguments she

6  and I will be able to present addressing any disagreements that

7  we have with the government.  So if the Court wants to ask

8  Ms. Marcus that question again, I think she's prepared to

9  answer.

10         THE COURT:  All right.  Ms. Marcus, I want to be

11 comfortable, if it's true, that you understand how the

12 guidelines work and the potential exposure to you for entering

13 into a cooperation agreement.  Do you feel comfortable with

14 that?

15         THE DEFENDANT:  I do.

16         THE COURT:  All right.  And has Ms. Benett explained

17 to you how the guidelines work?

18         THE DEFENDANT:  She has, your Honor.

19         THE COURT:  And the role of the loss amount in the

20 guideline calculation?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And the various elements that go into

23 determining what a guideline calculation is?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you understand that I have to determine

I9STMARP

1  what the relevant guideline range is, but I can't do that until

2  after I receive a report from the probation department.  Do you

3  understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And the probation department is going to

6  interview you.  That's because their report is going to involve

7  a lot of things, including reporting to me about your

8  upbringing, any criminal history that you have, your employment

9  history, your educational history, what your family situation

10 is, that is, if you are married, divorced, children, your

11 upbringing in general, and a variety of other things.  So I

12 want you to give them accurate and complete information.  Do

13 you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  And your attorney will have the right to

16 be there if she wants to.  And they will speak to the

17 government also.  They then will write a report to me with

18 their view of what the guideline range is, and then I attempt

19 to determine what the guideline range is.

20            But in determining what a fair and appropriate

21 sentence is, after I determine what the guideline range is, I

22 then have to determine whether there are grounds to depart from

23 the guideline range, either up or down.  In other words, I have

24 the ability to sentence you higher than the guideline range on

25 a departure basis or lower than the guideline range on that

I9STMARP

1    same basis.  Do you understand that?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  And after I do that, I then must apply all

4    of the factors in Section 3553 that go into a determination by

5    me of what the appropriate sentence for you should be, and one

6    that's sufficient but not greater than necessary to meet the

7    ends of the criminal justice system as set forth in Section

8    3553(a).  Do you understand that?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now do you understand that if you're

11   sentenced to prison, parole has been abolished, and you won't

12   be released from a prison sentence any earlier on parole?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And do you understand that if anyone has

15   attempted to tell you what your sentence is going to be or

16   should be or will be or may be, everybody can be wrong.  And

17   the reason for that is that I am the one who is going to

18   sentence you, and I don't know what your sentence is going to

19   be.  And the reason I don't me what your sentence is going to

20   be is because I don't have the information I need about you and

21   your crime.  Do you understand that?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And if I sentence you to a term that is

24   different from what you are thinking it's going to be or

25   different from what anyone has told you it's going to be, you

I9STMARP

```
 1    still are going to be bound to today's guilty plea and you
 2    won't be able to withdraw it.  Do you understand that?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Now I have a document that I'm asking the
 5    government to mark as -- I'm sorry, asking my deputy to mark as
 6    Government Exhibit 2.  And it's a letter dated September 28,
 7    five pages long, it's a letter addressed to Ms. Benett from --
 8              Is that Benet Kearney's signature?
 9              MS. FLETCHER:  It is, your Honor?
10              THE COURT:  Ms. Benett is the addressee, and the
11    signatory is Benet Kearney.
12              Show that to the defendant, please.
13              THE DEFENDANT:  Yes, your Honor.
14              THE COURT:  It's your signature?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Before you signed that, did you discuss
17    that agreement with Ms. Benett?
18              THE DEFENDANT:  I did.
19              THE COURT:  And did you understand it at the time you
20    signed it?
21              THE DEFENDANT:  Somewhat.  I understand it a lot more
22    now.
23              THE COURT:  I'm going to give you all the time you
24    want now to ask additional questions of Ms. Benett, because
25    it's important that you understand it and that all of your
```

I9STMARP

1    questions are answered.

2          You seem a little hesitant to ask me to enter a plea

3    of guilty, and I certainly understand that, because you're

4    nervous.

5          THE DEFENDANT:  I am.  And I'm sorry, your Honor, I

6    came out to New York expecting something completely different

7    to happen and I was kind of blindsided.

8          THE COURT:  All right.  And that's why I want to give

9    you whatever time you want.  I don't want you to be blindsided,

10   and if you are blindsided, I want to make sure that you feel

11   comfortable with the representation of Ms. Benett.

12         THE DEFENDANT:  I do.

13         THE COURT:  And that she answered your questions.

14         THE DEFENDANT:  She has.

15         THE COURT:  I'm not going to rush you at all, and I'm

16   sure Ms. Benett and Ms. Fletcher don't want to.

17         THE DEFENDANT:  It's fine.

18         THE COURT:  So again, if you want more time, I'm

19   prepared to give it to you.

20         THE DEFENDANT:  I understand.

21         THE COURT:  Do you want me to proceed?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Okay.  So one of the questions I have for

24   you is do you feel -- I understand that you now understand the

25   plea agreement, which is Government Exhibit 2, better than you

I9STMARP

1    used to.  Again, everything you say makes sense.  The more

2    questions you ask, the more answers you get, the more you

3    understand something.  But I want to make sure that you don't

4    have any more questions of Ms. Benett and you feel you fully

5    understand the agreement.  And if you don't, I am going to give

6    you whatever time you need to discuss it further with

7    Ms. Benett.

8             THE DEFENDANT:  Thank you, your Honor.  I do believe

9    that I understand it.

10            THE COURT:  All right.  And again, you can stop me at

11   any time.

12            THE DEFENDANT:  Thank you.

13            THE COURT:  So do you believe you now fully understand

14   the agreement?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  All right.  Do you have any questions of

17   me about the agreement?

18            THE DEFENDANT:  No, your Honor.

19            THE COURT:  Does that letter agreement, Government

20   Exhibit 2, constitute your complete and total understanding of

21   the entire agreement between the government, Ms. Benett, and

22   yourself?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Are there any side deals here?  Have you

25   reached any agreement with the government that is not contained

I9STMARP

1    in Government Exhibit 2?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Has anyone offered you any inducements or

4    threatened you or forced you to plead guilty or enter into the

5    plea agreement?

6              THE DEFENDANT:  No.

7              THE COURT:  You are you entering that the plea

8    agreement of your own free will?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Nobody forced you to do it, is that what

11   you're telling me?

12             THE DEFENDANT:  Correct.

13             THE COURT:  Do you understand that in this agreement

14   you've admitted the forfeiture allegation in the superseding

15   information, and you have agreed to forfeit to the United

16   States a sum of money that represents the amount of the

17   proceeds traceable to the commission of the crime by you?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Do you understand that in this agreement

20   you waived the right to assert the statute of limitations as a

21   defense to the action against you?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Ms. Benett, are you aware of any valid

24   defense that would prevail at trial or know of any reason why

25   Ms. Marcus should not be permitted to plead guilty?

I9STMARP

1          MS BENETT:  No, your Honor.

2          THE COURT:  Is there an adequate factual basis to

3    support her plea, in your view, Ms. Benett?

4          MS BENETT:  There is, your Honor.

5          THE COURT:  Is that true of the government as well?

6          MS. FLETCHER:  Yes, your Honor.

7          THE COURT:  Ms. Marcus, tell me now, give me the facts

8    that make you guilty of the crime of conspiring to engage in

9    wire fraud.

10         MS BENETT:  And your Honor, Ms. Marcus and I sat down

11   together before the hearing and wrote out -- she dictated to me

12   and I wrote out and made changes after she made it out so she

13   would have an opportunity to read a description of her conduct,

14   is that -- given her state of mind, is that okay with the

15   Court?

16         THE COURT:  Yes.  Ms. Marcus, you can certainly read

17   something.  I'm just asking that you read it slowly because we

18   have a court reporter here and people tend to read quickly when

19   they're nervous.  And I assume that your lawyer assisted you;

20   in fact, your lawyer told me she assisted you in writing that.

21   All of that is perfectly fine.  But I do need to know that what

22   you are about to read to me is true.  And you're under oath, so

23   is what you're about to read to me true?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Why don't you tell me what you did in

I9STMARP

1   connection with the superseding indictment which charges you

2   with conspiring to engage in wire fraud.

3        THE DEFENDANT:  Your Honor, from about 2008 until

4   early 2017 I worked in various telemarketing operations where I

5   agreed with others to market and sell products promising

6   financial returns that we knew the customers would never

7   receive.  During these years I was based in Utah and Arizona

8   and I worked with others in New Jersey and other states.  As

9   part of the scheme, we called potential customers all over the

10  country, including in Manhattan.

11       THE COURT:  Government, anything else on any of these

12  proceedings, because you are, I hope, keeping a checklist, is

13  there anything else that you want?

14       MS. FLETCHER:  I was keeping a checklist, and no, your

15  Honor, thank you.

16       THE COURT:  Ms. Benett, is there anything that the

17  defense wants?

18       MS BENETT:  No, your Honor.

19       THE COURT:  When you did the acts just told me about,

20  Ms. Marcus, did you know that what you were doing was wrong and

21  illegal?

22       THE DEFENDANT:  Yes.

23       THE COURT:  Government, what evidence do you have

24  against this defendant?

25       MS. FLETCHER:  Your Honor, at a trial against this

I9STMARP

defendant we would present testimony from victims of this

scheme who spoke directly with the defendant.  We would also

introduce recordings, consensual recordings made by those

victims of conversations with the defendant, as well as text

message and email communications between the defendant and

other members of the conspiracy, and finally we would introduce

the testimony of cooperating witnesses regarding their

understanding of her role in the scheme.

          THE COURT:  All right.  Ms. Marcus, how do you now

plead to the charge against you in Superseding Information S9

17 Crim 243, guilty or not guilty?

          THE DEFENDANT:  Guilty, your Honor.

          THE COURT:  Are you pleading guilty because you are

guilty?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Are you pleading guilty voluntarily and of

your own free will?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Because you acknowledge you're guilty as

charged, because I find you know your rights and are waiving

them knowingly and voluntarily, because I find your plea is

entered knowingly and voluntarily and is supported by an

independent basis in fact containing each of the essential

elements of the offense, I accept your guilty plea, Ms. Marcus,

and I determine you to be guilty of conspiring to engage in

I9STMARP

1    wire fraud.

2              I'm going to set the sentencing control date at

3    January 10, 2019 at 3:30 p.m.

4              I have a report here from the pretrial services

5    office, and we have had the pretrial services officer patiently

6    present during this proceeding.  What's the position of the

7    parties?  Government?

8              MS. FLETCHER:  Your Honor, the parties have an

9    agreed-upon bail package for your Honor's consideration.

10             THE COURT:  All right.  Again, I read the pretrial

11   services report.  What's the agreed-upon package?

12             MS. FLETCHER:  Your Honor, the defendant to be

13   released on her own recognizance, subject to regular pretrial

14   supervision, including drug testing and treatment as directed

15   by pretrial, mental health treatment as directed by pretrial,

16   the defendant to surrender any passport -- I understand she

17   doesn't have a passport, so to make no new applications for any

18   travel documents -- and for the defendant's travel to be

19   restricted to the continental United States.

20             THE COURT:  Who is going to supervise her?

21             MS. FLETCHER:  She will be supervised in the district

22   of residence, which I understand is the District of Arizona.

23             THE COURT:  Her own recognizance, is that the

24   agreement, her own recognizance?

25             MS. FLETCHER:  Yes, your Honor.

I9STMARP

1          THE COURT:  Defense?

2          MS BENETT:  There were a couple of things that I had

3    not discussed previously with the government, specifically

4    mental health treatment and drug treatment.  Certainly

5    Ms. Marcus -- I know that pretrial recommended that, but I

6    don't think it's appropriate in this case.  She is

7    participating in a methadone clinic where she will be

8    supervised by pretrial.  She will give urine samples at

9    pretrial.  She gives urine samples at her methadone clinic.

10         She is working on finding employment, and in my

11   experience, mental health treatment programs directed by

12   pretrial often have payment requirement for my clients that

13   presumably under her circumstances is very hard to meet.  I

14   understand that pretrial heard from Ms. Marcus' mother that

15   she's depressed.  I'm not opposed to her voluntarily seeking

16   mental health treatment, but my concern with that being part of

17   the pretrial supervision package or Court ordered or Court

18   approval of pretrial recommendation is that if for some reason

19   she doesn't go to a counseling session she's at a risk of being

20   in custody, and I don't think there are circumstances here

21   warranting it be part of the pretrial package.  She's been

22   participating for over two years with the federal government

23   and hasn't had any problem.  She responds when they call --

24         THE COURT:  I'm not going to require drug treatment,

25   but I am going to require periodic drug testing, which is part

I9STMARP

1   of regular pretrial.

2          MS BENETT:  That we have no objection to.

3          MS. FLETCHER:  Your Honor, it was not the government's

4   intention to misrepresent the agreed-upon terms.  I thought we

5   discussed that term specifically --

6          THE COURT:  Move on.

7          MS. FLETCHER:  -- but to the extent that the Court and

8   pretrial are comfortable with testing and then they can raise

9   any issues --

10          THE COURT:  If their test is positive, the district of

11   residence will notify the district here and they will notify

12   me.

13          MS. FLETCHER:  That's fine, your Honor.

14          THE COURT:  All right.  I am going to grant the

15   agreed-upon bail package as follows:  The defendant will be

16   released on her own recognizance.  She is to be supervised with

17   regular pretrial supervision to include periodic drug tests.

18   She is to turn over her passport, and I understand she said she

19   doesn't have a passport, and I'm directing her to make no new

20   applications for travel.  Her travel is restricted to the

21   continental United States.  That's the agreed-upon bail

22   package, and that's the bail package that I'm imposing.

23          I take it the defense has seen the pretrial services

24   report, correct?

25          MS BENETT:  I have, your Honor.

I9STMARP

```
1              THE COURT:  You should speak with your client in
2    regard to the need for her to seek medical attention, because
3    based on what's here, I would think that should be her number
4    one job.
5              MS BENETT:  Yes, I will have a -- I will talk about it
6    with her.
7              THE COURT:  That's not something that you want to put
8    off.
9              Anything else, government?
10             MS. FLETCHER:  Not from the government, thank you,
11   your Honor.
12             THE COURT:  Anything else, defense?
13             MS BENETT:  No, your Honor, thank you.
14             THE COURT:  Thank you all.
15             (Adjourned)
16
17
18
19
20
21
22
23
24
25
```